IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KURT A., ) | |
| ) | No. 21 C 6275 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Kurt A. appeals the Acting Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

## Background

On January 12, 2019, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 13-27, 68-91.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 27, 2018. (R. 15.) At step two, the ALJ found that plaintiff had the severe impairments of status post right total ankle replacement in 2006 with total replacement on December 31, 2018, right tibia/fibula open reduction and internal fixation surgery on June 21, 2019, and osteoarthritis.[1] (R. 16.) At step three, the ALJ found that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. (R. 19.) At step four, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform light work with certain exceptions. (R. 20-25.) At step five, the

---

[1] As explained below, due to the failure of his first ankle replacement from 2006, plaintiff had a second ankle replacement in 2018.

2

ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus he is not disabled. (R. 25-27.)

Plaintiff argues that the ALJ erred in concluding that he could meet the walking/standing requirements of light work. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (stating that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). In making this determination, the ALJ considered the opinions of the state agency consultants and medical records that showed that: (1) plaintiff had a total right ankle replacement in 2006; (2) starting in fall of 2018, he began having right ankle pain, which his doctors determined was due to the failure of his ankle replacement; (3) on December 31, 2018, plaintiff had a second right ankle replacement; (4) in March 2019, plaintiff told his doctor that his ankle was swollen and sore at the end of the day, but he reported improvement after physical therapy; (5) in June 2019, plaintiff fractured his right tibia/fibula and had surgery to repair it; (6) from August 2019 to December 2019, plaintiff reported that his right leg and/or ankle was sore after working or at the end of the day; and (7) on July 1, 2020, plaintiff told his doctor he quit his job because of his ankle pain, but the doctor's findings on that date were the same as those recorded in December 2019. (R. 21-24.)

In reaching the RFC for light work, plaintiff says, the ALJ ignored the orders of plaintiff's orthopedic surgeon, Dr. Lapinski, that plaintiff not bear weight on his right leg after each surgery. On the contrary, the ALJ expressly acknowledged the surgeon's orders and explained why they did not warrant a different RFC:

> These opinions from [plaintiff's] orthopedic surgeon are not persuasive to the overall record. The surgeon provided an explanation and treatment notes at the times of the opinions support the opinions at those times. To state another way, the undersigned recognizes that these assessment[s] are temporary in nature and do not have record support for longitudinal functioning, as usually his right ankle and leg improved within a few months of surgeries. The opinions are inconsistent with

>other evidence documenting improvement following the surgeries and a lack of significantly abnormal exam findings on a consistent or extended basis.

(R. 24-25) (citations omitted). Because the ALJ's interpretation of Dr. Lapinski's orders is supported by substantial evidence, it is not a basis for remand.

Alternatively, plaintiff argues that the ALJ based the RFC, in part, on a medical determination that she was not qualified to make. The ALJ endorsed the RFC for light work adopted by the state agency consultant at the reconsideration level. (R. 24.) The ALJ noted that there was medical evidence that postdated the consultants' review but said it was "consistent with the evidence reviewed by th[e] consultant and their findings, as the claimant had minimal abnormal exam findings and relatively normal right tibia/fibula imaging studies." (*Id.*) As plaintiff points out, the ALJ is not qualified to assess imaging studies.[2] But she is qualified to summarize information set forth in medical records, which is what she did here. (*Id.* (citing R. 836, 838 (treatment notes from December 5, 2019 and July 1, 2020 stating that x-rays of plaintiff's right leg showed that the fibula fracture was well-healed and the ankle replacement was well aligned)).)

Plaintiff next argues that the ALJ erred by omitting use of a cane from the RFC, given his statements that he sometimes uses one. (*See* ECF 15 at 10.) The ALJ was not, however, required to accept plaintiff's symptom allegations at face value. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions."). And she did not. Rather, she compared plaintiff's allegations

---

[2] Plaintiff condemns the ALJ's lay interpretation of the x-rays, but repeatedly offers his own non-expert interpretation of them. (*See* ECF 15 at 9, 12.)

4

about using a cane to the medical evidence and concluded that his allegations were not supported. (R. 23.)[3]  That is not a basis for remand.

Plaintiff also contends that the ALJ erred by failing to evaluate whether the evidence is consistent with and supports the medical opinions she credited.  *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").  In reality, the ALJ identified the evidence that supports and is consistent with the opinions she credited.  (*See* R. 23-24.)  Plaintiff's belief that the ALJ should have weighed the evidence differently is not a basis for a remand.[4]

Plaintiff also contends the ALJ's evaluation of his symptoms was flawed because she:  (1) drew her own conclusions about the imaging studies; (2) relied on notations in medical records that said plaintiff was not in distress; and (3) failed to consider nonmedical factors in evaluating plaintiff's allegations.  "[W]e will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support."  *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).  Plaintiff's first argument fails because, as discussed above, the ALJ did not independently interpret the imaging studies.  The second argument is grounded in *Wanserski v. Colvin*, which held that use of the phrase in "no acute distress" in medical records is not, by itself, grounds for rejecting claims of pain.  No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015).  That was not, however, the only basis for the ALJ's

---

[3] In his reply brief, plaintiff argues that the RFC is flawed because the ALJ did not consider his "severe ankle arthritis" or the combined impact of his arthritis, obesity, and other unspecified lower extremity impairments.  (ECF 21 at 2.)  Because plaintiff makes these arguments for the first time in his reply brief, however, they are waived.  *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016) (stating that Social Security claimant waived arguments by raising them for the first time in reply brief).

[4] Plaintiff contends that the medical opinions the ALJ credited were not supported by the record because they did not account for his obesity.  (ECF 15 at 12.)  Plaintiff did not, however, identify any functional limitations his obesity imposed.

conclusion that plaintiff's complaints of pain were not supported by the record. Rather, the ALJ "consider[ed] the lack of significantly abnormal exam findings on a consistent basis and lack of notations of the claimant in distress [and] the claimant's course of treatment and reports of improvements following surgeries." (R. 23.) Because the ALJ did not rely exclusively on the "no acute distress" notations as the basis for her symptom evaluation, her inclusion of them is not error. Lastly, plaintiff argues that the ALJ failed to consider relevant nonmedical factors in evaluating his symptoms. *See* 20 C.F.R. § 404.1529 (directing an ALJ to consider, inter alia, plaintiff's daily activities; the location, duration, frequency, and intensity of his pain; factors that precipitate and aggravate pain; the type, dosage, effectiveness, and side effects of medication he takes to alleviate pain; treatment, other than medication, that he has received for pain relief; and other factors concerning functional limitations and restrictions due to pain). The record shows that the ALJ considered plaintiff's description of his daily activities, the intensity of his pain, the factors he said aggravate it, and his reported use of a cane and over-the-counter pain relievers to mitigate it. (R. 21.) The fact that she did not uncritically accept his representations does not make her symptom evaluation flawed.

## Conclusion

For the reasons set forth above, the Court affirms the Acting Commissioner's decision and terminates this case.

**SO ORDERED.**         **ENTERED: March 28, 2023**

**M. David Weisman**
**United States Magistrate Judge**